UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MICHAEL MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-00077-WTL-MJD |
| | ) | |
| MELLISA Nurse (CIF Defendant), | ) | |
| JOHNSON Nurse (CIF Defendant), | ) | |
| DAWSON Nurse (CIF Defendant), | ) | |
| OWENS Mr., Medical (CIF Defendant), | ) | |
| LISA Nurse (CIF Defendant), | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT**

Plaintiff Michael Miller, an inmate at the Correctional Industrial Facility (CIF), brings this action pursuant to 42 U.S.C. § 1983. Mr. Miller alleges that on June 9, 2017, he suffered a fall in the cafeteria and hurt his back, neck, heard, wrist, and knee, but failed to receive any medical treatment from Nurse Mellisa, Nurse Johnson, Nurse Dawson, Mr. Owens, and Nurse Lisa. *See* Dkt. No. 1; Dkt. No. 4. The Court screened his complaint and permitted his Eighth Amendment claims against the defendants to proceed. Dkt. No. 4.

The defendants move for summary judgment on Mr. Miller's claims as against Nurse Lisa Ball, DON James Owens, and Dr. Loretta Dawson, arguing that he failed to exhaust his administrative remedies against these individuals as required by the Prison Litigation Reform Act (PLRA) before filing this lawsuit. The defendants do not dispute that Mr. Miller successfully exhausted all administrative remedies regarding his allegations against defendants Nurse Melissa Lawrence and Nurse Jill Johnson.

## I. Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" designated evidence which "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-movant may not rest upon mere allegations. Instead, "[t]o successfully oppose a motion for summary judgment, the nonmoving party must come forward with specific facts demonstrating that there is a genuine issue for trial." *Trask–Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 677 (7th Cir. 2008). "The non-movant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trs.*, 278 F.3d 693, 699 (7th Cir. 2002) (internal quotation and citation omitted).

A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The court views the facts in the light most favorable to the non-moving party, and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

"The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.*, 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson*, 477 U.S. at 248). The substantive law applicable to this motion for summary judgment is the

PLRA, which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; s*ee Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted). The requirement to exhaust provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91; *see also Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004).

It is the defendants' burden to establish that the administrative process was available to Mr. Miller. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). "[A]n inmate

3

is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

"This circuit has taken a strict approach to exhaustion." *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). "An inmate must comply with the administrative grievance process that the State establishes, at least as long as it is actually available to the inmate." *Id.*

## II. Statement of Facts

The following statement of facts was evaluated pursuant to the standard set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Miller as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

Robert Stafford is employed at CIF as the Grievance Specialist. In this position, he oversees the grievances process of all medical and non-medical grievances by inmates at CIF. Mr. Stafford is the custodian of the grievance records maintained by CIF, which include grievance documents filed by inmates as well as responses and appeals served by IDOC staff. As such, he has access to all inmate grievance documentation. Mr. Stafford is also knowledgeable regarding the process and all requirements of the Indiana Department of Corrections (IDOC) offender grievance process including its application at CIF.

The purpose of the offender grievance process, which is available to Mr. Miller, is to provide administrative means by which inmates may resolve concerns and complaints related to the conditions of their confinement at their current institution. The grievance procedures at CIF are noted in the inmate handbook and are provided to inmates upon their arrival at CIF. The grievance process consists of the following three steps: (1) an informal attempt to solve a problem

4

or address a concern, (2) if this informal resolution is unsuccessful, the offender must file a Level 1 formal grievance, which includes the submission of a Level 1 Grievance Form to the Administrative Assistant at the facility, and (3) the final step is to appeal the facility's decision by submitting a Level 2 Grievance Appeal. Successful exhaustion of the grievance procedure by an offender includes timely pursuing each step or level of the informal and formal process. An offender must also use the proper grievance forms in order to exhaust successfully and must file timely each grievance within the timeframe outlined by the administrative procedures of the IDOC.

Mr. Miller is currently an inmate at CIF. Based upon Mr. Stafford's review of the history file log, Mr. Miller filed two grievances regarding medical treatment in 2017, which were entered into the OGRE system as grievance 97003 and 98370.

1. <u>Grievance 97003</u>

On June 7, 2017, Mr. Miller filed an informal grievance alleging he was denied medical treatment by "Nurse Melissa" and that she was unprofessional. Mr. Miller's informal grievance was received and responded to by Lisa Bergeson, in which Mr. Miller was informed that he had been seen five times by the nurses in the last month and each time refused to have a thorough assessment. She also indicated the Mr. Miller was increasingly hostile.

On June 17, 2017, Mr. Miller filed a formal grievance at CIF alleging that "Nurse Melissa" denied him medical treatment after an alleged incident on June 9, 2017. Mr. Miller's formal grievance was received on June 17, 2017 by the Grievance Officer Robert Stafford, and a response was forwarded on June 23, 2017, recommending the grievance be denied. Mr. Miller thereafter appealed, and a final denial of his grievance was forwarded on July 10, 2017.

2. <u>Grievance 98370</u>

On August 6, 2017, Mr. Miller filed an informal grievance regarding his displeasure with being removed from the diabetic chronic care treatment line. His grievance was responded to by Lisa Bergeson, indicating that recent labs showed he was no longer diabetic, but he was still encouraged to make healthy choices.

On September 18, 2017, Mr. Miller filed a formal grievance, again expressing displeasure with being removed from the diabetic chronic care treatment line. Mr. Miller received an official response from his grievance on October 5, 2017, thereafter appealed, and a formal denial of the appeal was received on October 16, 2017.

### III. Discussion

The defendants argue that Mr. Miller failed to exhaust his available administrative remedies as required by the PLRA with respect to his claims against Lisa Ball, James Owens or Loretta Dawson, but do not dispute that he successfully exhausted all administrative remedies regarding all allegations against Defendants Lawrence and Johnson. Dkt. No. 19.

Mr. Miller states that he agrees with the entirety of the defendants' "Undisputed Material Facts," except for the conclusion that he failed to exhaust his administrative remedies. Dkt. No. 22 at 1. Mr. Miller argues that he did exhaust his remedies against Lisa Ball (Bergeson, Owens, and Dawson). *Id.* He asserts that he activated the grievance process with Lisa Ball, Owens, and Dawson by filing medical request forms. He asserts that Lisa Bergeson, HSA, is responsible for responding to informal grievances and is "Lisa Ball." *Id.* at 1-2.

1. Claims against Nurse Lisa

Mr. Miller asserts that defendant "Nurse Lisa" refers to Lisa Bergeson, HSA, the grievance specialist, and not to Nurse Lisa Ball, who has appeared in this case. Thus, any claims against Nurse Lisa Ball must be **dismissed**.

As to Lisa Bergeson, the uncontested facts demonstrate that the defendants have met their burden of proving that Mr. Miller "had available [administrative] remedies that he did not utilize." *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004). Although Mr. Miller previously availed himself of the grievance process, he failed to exhaust the grievance process with respect to the claims in his complaint against Lisa Bergeson. Although Lisa Bergeson responded to Mr. Miller's grievances, she herself was not a subject of his grievances. Because completing all levels of the grievance process is required, the uncontested evidence shows that Mr. Miller did not exhaust his administrative remedies as to Lisa Bergeson. *See Woodford*, 548 U.S. at 90. Thus, Mr. Miller's claims against Lisa Bergeson are **dismissed without prejudice**.

2. Claims against Other Defendants

The defendants concede Mr. Miller exhausted his administrative remedies as to Nurse Melissa Lawrence by identifying her as "Nurse Mellissa" in his grievances in grievance # 97003. Although Mr. Miller did not specifically identify Nurse Jill Johnson in his grievances, the defendants concede that the allegations in Mr. Miller's Complaint specifically allege that defendants Melissa Lawrence and Jill Johnson interacted with Mr. Miller together after his alleged fall, and given the Seventh Circuit's holding in *Maddox v. Love*, 655 F.3d 709, 722 (7th Circuit 2011), the defendants are not arguing failure to exhaust against those two defendants.

Mr. Miller's grievances make clear that he is attempting to grieve the denial of medical treatment after his fall. He requests to be seen by a doctor and have his back x-rayed, and explains

that he is in pain. Dkt. No. 19-2 at 17. He also makes clear in October 2017 in grievance # 98370 that he is "once again [] being denied medical treatment." *See*, *e.g.*, Dkt. No. 19-2 at 5.

Although Mr. Miller did not specifically name the other defendants in the grievance, that was a mere technically defect that had no effect on the exhaustion process and did not limit the usefulness of the exhaustion requirement of putting the prison on notice of his grievance that he had been denied medical care after his fall. *See Maddox*, 655 F.3d at 722 (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007) (providing early notice to those who might later be sued has not been thought to be one of the leading purposes of the exhaustion requirement) (citing *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation.")). Nor do the defendants allege that Mr. Miller was required under IDOC policy to specifically identify individuals in his grievances.

Additionally, Mr. Miller was not required to file multiple, successive grievances raising the same issue (such as the failure to provide medical care) if the objectionable condition is continuing. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). "[O]nce a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement." *Id.*

Here, Mr. Miller's grievances sufficiently put the prison on notice of his claim that although he requested to be seen after his fall, medical staff refused to see him.

### IV. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment, Dkt. No. 19, is **granted in part.** The claims against Nurse Lisa Ball are dismissed and against Lisa Bergeson are

dismissed without prejudice. The claims remaining in this action are Mr. Miller's Eighth Amendment claims against Nurse Melissa Lawrence, Nurse Jill Johnson, Nurse Owens, and Dr. Dawson.

No partial judgment shall issue at this time.

The **clerk is directed to update the docket** to reflect that the correct names of the remaining defendants are Nurse Melissa Lawrence, Nurse Jill Johnson, DON James Owens, and Dr. Loretta Dawson. The clerk is **directed to terminate** Nurse Lisa on the docket.

**IT IS SO ORDERED.**

Date: 8/7/18

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

MICHAEL MILLER
963890
PENDLETON - CIF
CORRECTIONAL INDUSTRIAL FACILITY
Inmate Mail/Parcels
5124 West Reformatory Road
PENDLETON, IN 46064

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com