UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MICHAEL MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-00077-SEB-MJD |
| | ) | |
| NURSE MELISSA LAWRENCE, | ) | |
| NURSE JILL JOHNSON, | ) | |
| DR. DAWSON, | ) | |
| NURSE OWENS, | ) | |
| | ) | |
| Defendants. | ) | |

**Order Granting Unopposed Motion for Summary Judgment
and Directing Entry of Final Judgment**

Plaintiff Michael Miller, while an inmate in the Indiana Department of Correction (IDOC) proceeding *pro se*, filed this 42 U.S.C. § 1983 action seeking compensatory and punitive damages for the defendants' alleged deliberate indifference to his serious medical needs. Dkt. 1. Pretrial discovery has concluded and the defendants now move for summary judgment. Dkt. 60. Mr. Miller was served with the motion and a separate notice of right to respond, dkt. 63, but has not responded to the defendants' motion and it is therefore unopposed. For the reasons explained below, the defendants' motion for summary judgment, dkt. [60], is **granted**.

**I.  Summary Judgment Legal Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment

if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 573-74 (7th Cir. 2017).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Not every factual dispute between the parties will prevent summary judgment, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Mr. Miller failed to respond to the defendants' motion for summary judgment, and the deadline for doing so has long passed. The consequence is that Mr. Miller has conceded the defendants' version of events. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *see* S.D. Ind.

Local Rule 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."). Because Mr. Miller failed to respond to the defendants' motion, and thus failed to comply with the Court's Local Rules regarding summary judgment, the Court will not consider allegations in Mr. Miller's complaint as evidence opposing the motion for summary judgment. Although *pro se* filings are construed liberally, *pro se* litigants such as Mr. Miller are not exempt from procedural rules. *See Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) (noting that "pro se litigants are not excused from compliance with procedural rules"); *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) (stating that procedural rules "apply to uncounseled litigants and must be enforced"). This does not alter the standard for assessing a Rule 56 motion, but it does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

## II. Factual Background

The following statement of facts was evaluated pursuant to the standard set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Miller as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

In his verified complaint, Mr. Miller contended that he was injured in a May 2017 slip and fall in the prison chow hall. Dkt. 1 at 2. He contends that he repeatedly sought medical treatment from the defendants, who are the contract medical providers at the prison, but they refused to

provide him treatment. *Id.* Mr. Miller contends that when he was seen by defendants Nurse Lawrence and Nurse Johnson, they told him there was nothing they could do for him and refused to allow him to see a physician. *Id.* His subsequent attempts to obtain medical examination and treatment were continually rebuffed by the defendants, Mr. Miller claims. *Id.*

Defendant "Dr. Loretta Dawson" is actually a nurse practitioner who was employed to provide medical services at Mr. Miller's prison facility at all times relevant to this lawsuit. Dkt. 62-1 at ¶¶ 1-2. She first saw Mr. Dawson on June 12, 2017, when he reported his fall in the chow hall a month earlier. *Id.* at ¶ 4; dkt. 62-6 at 86-88. Mr. Miller walked into the examination room with no difficulty and had a steady gait. Her inspection of Mr. Miller's left elbow and right wrist did not show any bruising or obvious injury. *Id.* NP Dawson asked a series of questions and concluded that Mr. Miller had the ability to perform all of the normal activities of daily living. *Id.* Mr. Miller reported that he had been purchasing medicine from commissary since his fall. *Id.* NP Dawson encouraged him to purchase effective medication as needed from commissary, and to follow-up with medical providers if necessary. *Id.* Mr. Miller was apparently not satisfied with NP Dawson's assessment and he left in an agitated state. *Id.* She notes that Mr. Miller's active prescriptions at the time were for aspirin, Propranolol, Remeron and an expiring prescription for Tylenol. *Id.*

On September 6, 2017, NP Dawson saw Mr. Miller for the second time on a scheduled chronic care visit. Dkt. 62-1 at ¶ 5; dkt. 62-6 at 117-20. They discussed his hypertension and diabetes, and NP Dawson reviewed Mr. Miller's lab reports. *Id.* At no time during this visit did Mr. Miller report any ongoing or serious symptoms associated with the May 2017 fall, nor did he report pain in his neck, back, hand, wrist or knee. *Id.* NP Dawson specifically noted in the medical

record that Mr. Miller was negative for back pain, joint pain, joint swelling, muscle weakness, or neck pain. *Id.*

NP Dawson is unaware of any diagnosis or assessment of Mr. Miller having any serious or significant injury or abnormality of his back, neck, wrist, or knee that would be in any way associated with the fall in May 2017. Dkt. 62-1 at ¶ 6. She notes that the medical records contain a report by Dr. Robert Smith, not a defendant in this lawsuit, of a November 27, 2017, visit with Mr. Miller in which Mr. Miller reported vigorous exercise. *Id.* at ¶ 7; dkt. 62-6 at 164-67. This record contains no report of any serious or significant abnormality of Mr. Miller's neck, back, wrist or knee. *Id.*

Defendant Jill Johnson is a registered nurse who at all times relevant to this lawsuit was employed to provide medical care to inmates at Mr. Miller's prison. Dkt. 62-2 at ¶¶ 1-2. Nurse Johnson testifies in her affidavit that on May 9, 2017, Mr. Miller reported a slip and fall, was taken to the medical office for an assessment, but he refused to be assessed. *Id.* at ¶ 5; dkt. 62-6 at 58. She testifies that the medical record contains no notes concerning the presence of an injury. *Id.*

Nurse Johnson's first interaction with Mr. Miller was on May 13, 2017, four days after his slip and fall, for a nurse sick call visit. Dkt. 62-2 at ¶ 6; dkt. 62-6 at 61-62. The nurse sick call was in response to a health care request submitted by Mr. Miller complaining of knee, head, and back pain suffered in a fall four days earlier. *Id.* When Nurse Johnson saw him, Mr. Miller said that he was "hurting all over" and requested an x-ray. *Id.* Nurse Johnson told him there would be a $5.00 co-pay for the nurse sick call visit, Mr. Miller became very upset. *Id.* Nurse Johnson said she would perform a full nursing medical assessment, but he still became agitated. *Id.* Mr. Miller also became rude and argumentative. *Id.* Nurse Johnson reported that Mr. Miller raised his voice and berated her. *Id.* He refused her assessment offer and refused to sign a medical services refusal form. *Id.*

5

The refusal form was then signed by Nurse Johnson and another medical officer. *Id.* A copy was mailed to Mr. Miller. *Id.* Nurse Johnson noted that Mr. Miller was alert, oriented, was able to walk and move independently without difficulty, with a normal gait and no limp. *Id.* No obvious signs of distress or injury were observed. *Id.*

Mr. Miller submitted another health care request, reporting the same complaints, and was seen the very next day by Nurse Johnson. Dkt. 62-2 at ¶ 8; dkt. 62-6 at 63-64. This would be the only other time she saw Mr. Miller. *Id.* Mr. Miller again refused a nursing assessment. *Id.* Nurse Johnson reminded Mr. Miller that pursuant to IDOC policy, he has to receive a nursing assessment prior to being referred to a physician. *Id.* Mr. Miller again became argumentative. *Id.* Nurse Johnson, trying to "redirect the visit", asked Mr. Miller what was hurting. *Id.* She attempted to ask questions about his injury and the symptoms in his wrist or back. *Id.* Mr. Miller would only respond by stating "they hurt." *Id.* When Nurse Johnson asked specific questions about the fall, Mr. Miller was unable to provide clear information. *Id.* Nurse Johnson observed no obvious injuries, no redness, contusions, or swelling, no bleeding, abrasions, lacerations, or open wounds. *Id.*

Nurse Johnson noted that while they talked, Mr. Miller was able to move his extremities without difficulty. *Id.* She concluded that what she saw was not correlating with Mr. Miller's complaints. *Id.* As she tried to clear up the discrepancies with further questions, Mr. Miller again became argumentative. *Id.* Nurse Johnson explained that some soreness could be expected after a fall. *Id.* She again encouraged Mr. Miller to use medications such as Tylenol or Ibuprofen, which she noted he was able to purchase through the commissary. *Id.* Nurse Ms. Johnson also suggested that Mr. Miller apply ice to any sore areas. *Id.* Still agitated, Mr. Miller told Nurse Johnson that he would "just go above you" and left the examination. *Id.*

Nurse Johnson never observed signs of an injury, nor did Mr. Miller ever appear to be bruised or bleeding. Dkt. 62-2 at ¶ 12. Both times she met with him, Mr. Miller had the ability to ambulate without restriction, walking in and out of the examination room. *Id.*

Nurse Johnson is aware that in the weeks following their second visit, Mr. Miller was evaluated by several different medical providers, and to her knowledge Mr. Miller was never diagnosed with an injury or abnormality from the May 2017 fall. *Id.* at ¶ 10.

Defendant James Owens, a registered nurse who is named in the complaint as "Don James Owens," was the Director of Nursing at Mr. Miller's prison facility at all time relevant to this lawsuit. Dkt. 62-3 at ¶¶ 1-2. Sometime around June 12, 2017, Mr. Owens was advised of issues with Mr. Miller and his medical care. *Id.* at ¶ 3; dkt. 62-6 at 77. Mr. Miller had submitted an informal request asking to see a doctor for knee and wrist pain resulting from an injury in May 2017. *Id.* Mr. Owens reviewed Mr. Miller's medical records and observed that Mr. Miller had face-to-face interactions with nurses on May 9, 13, 14, and 18, and again on June 7, 2017. *Id.* He noted that at each visit Mr. Miller refused to be assessed by the nurse. *Id.* Mr. Owens also observed the medical records reflected that Mr. Miller had become increasingly hostile to the nurses. *Id.* Mr. Owens responded, in writing, to Mr. Miller and advised him that he could not bypass a nurse's assessment and go straight to a doctor. *Id.*

On June 15, 2017, Mr. Owens met with Mr. Miller in person for his most recent request for health care and to discuss the repeated requests for healthcare. Dkt. 62-3 at ¶ 4; dkt. 62-6 at 83-85. Mr. Miller again requested to see a doctor about significant pain in his back, and stated he was taking Advil purchased from the commissary but it was no longer effective to alleviate pain. *Id.* Mr. Owens noted that Mr. Miller's motion did not appear to be limited during the assessment. *Id.* He had a normal gait but complained of wrist and back pain. *Id.* Mr. Owens decided to ask

IDOC Internal Affairs if they could review the video footage from the chow hall to determine the nature of the fall. *Id.* In the interim, Mr. Owens ordered that Mr. Miller receive Tylenol as needed pursuant to nursing protocol, and he also scheduled Mr. Miller for an assessment from a practitioner onsite. *Id.* NP Dawson met with Mr. Miller on June 20, 2017, in the nursing visit described at the beginning of this section of this Order. Dkt. 62-3 at ¶ 5. She observed no apparent injury and did not believe any further treatment was necessary. Id.; dkt. 62-6 at 86-88.

Mr. Miller allowed Mr. Owens to perform a nursing assessment, and given Mr. Miller's persistent requests, Mr. Owens scheduled Mr. Miller for an evaluation by a practitioner. Dkt. 62-3 at ¶ 9. This is the visit with NP Dawson that occurred June 20, 2017. *Id.*

Mr. Owens received an informal request from Mr. Miller on July 13, 2017, asking for a refill of aspirin, and also asking about the video of his fall. Dkt. 62-3 at ¶ 6; dkt. 62-6 at 95. Mr. Owens responded that according to IDOC Internal Affairs, a review of the video for May 9, 2017, did not see any indication that Mr. Miller actually fell. *Id.*

Although Mr. Miller complained of pain, Mr. Owens did not observe any obvious signs of a serious injury or abnormality. Dkt. 62-3 at ¶ 10.

Defendant Melissa Lawrence is a registered nurse who at all time relevant to this lawsuit was a contract medical provider at Mr. Miller's prison. Dkt. 64 at ¶¶ 1-2. She saw Mr. Miller on June 7, 2017, on his request for healthcare complaining of pain from a fall. *Id.* at ¶ 5. At the beginning of the visit, Mr. Miller was rude and called all nurses at the facility liars. *Id.* It was nearly impossible to perform any type of nursing assessment or make any recommendations for care, as Mr. Miller continually repeated that nurses were liars. *Id.* Nurse Lawrence noted that Mr. Miller easily walked out of the medical appointment. *Id.* Nurse Lawrence wrote in the medical record that during the entire visit, Mr. Miller was able to sit and stand with no signs of distress and

no signs of any injury. *Id.*; dkt. 62-6 at 75-76. This was Nurse Lawrence's only interaction with Mr. Miller during the time relevant to this lawsuit. Dkt. 64 at ¶ 6.

Mr. Miller testified in a deposition taken February 4, 2020, that he is suing Nurse Lawson because she was negligent and did not provide him medical care. Dkt. 62-5 at 18. His claim against Nurse Johnson is for the same thing. *Id.* at 19. Mr. Miller contends that Mr. Owens is liable because he is in charge of the nursing staff, did not order x-rays or other treatment, and was untruthful. *Id.* at 19-20. He is suing Nurse Dawson because when he needed an x-ray or medications she did not give him an assessment or medical treatment. *Id.*

As to his fall in the chow hall, Mr. Miller recalls that afterward he was taken to the health care unit. *Id.* at 20-21. He also testified that after the visit, he was able to walk back to his housing unit. *Id.*

Mr. Miller was unable to point to any medical record to suggest that he has ever diagnosed with an injury or abnormality of this back, neck, head, wrist or knee. *Id.* at 39-40. He has not sought any medical treatment related to the slip and fall since his release from IDOC custody. *Id.* at 41.

### III. Discussion

#### A.    Deliberate Indifference Legal Standard

Prison officials violate the Eighth Amendment proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The standard articulated in Estelle – deliberate indifference to serious medical needs" – contains both an objective element and a subjective element. *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014). The former requires that the deprivation suffered by the prisoner be "objectively,

sufficiently serious," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). As the Court explained in *Farmer*, to be sufficiently serious "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." 511 U.S. at 834. The objective element requires that the inmate's medical need be sufficiently serious. The subjective element requires that the officials act with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "[T]he appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited deliberate indifference." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). In *Farmer*, the Court illuminated the nature of deliberate indifference:

> We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

511 U.S. at 837.

"Objectively serious medical needs are those that have either been diagnosed by a physician and demand treatment, or are 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017) (quoting *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012)). Medical malpractice, negligence, or gross negligence do not rise to the requisite culpable state of mind for deliberate indifference, which is akin to criminal recklessness. *See, e.g., Cesal*, 851 F.3d at 721; *King*, 680 F.3d at 1018.

**B.     Analysis**

On the undisputed facts, no reasonable finder of fact could find that any of the defendants was deliberately indifferent to Mr. Miller's serious medical needs. Assuming for purposes of summary judgment that Mr. Miller's reported pain from his slip and fall was an objectively serious

medical attention, the evidence is that no defendant was deliberately indifferent. Each defendant had relatively few interactions with Mr. Miller. All noted that he exhibited normal range of motion, walked normally, and displayed no objective signs of injury such as bruising, swelling, contusions, or abrasions. Mr. Miller did not report that he was unable to perform normal activities of daily living.

Mr. Miller repeatedly turned down all but one of the nursing staff's attempts and offers to conduct a nursing assessment, which is required by IDOC policy before referral to a physician. When he consented to an assessment from Mr. Owens, who is a nurse, Mr. Owens referred him to a nurse practitioner in large part due to Mr. Miller's repeated requests for medical care. NP Dawson found no objective evidence of the need for a doctor's attention. Mr. Miller left each medical visit by walking out, on his own, without difficulty and with a normal gait.

Each defendant also considered Mr. Miller's complaints of pain. Although each noted that his subjective complaints of pain did not correspond with the objective medical assessments, they also encouraged Mr. Miller to continue to purchase over-the-counter pain medications from the commissary and take that medication as needed pursuant to the label instructions. Mr. Miller was also provided a medical order for Tylenol by Mr. Owens.

Applying the deliberate indifference legal standard explained in Section III.A to the undisputed facts set forth in Section II, there is not sufficient evidence on which a reasonable finder of fact could find any of the defendants violated Mr. Miller's Eighth Amendment rights. The defendants' motion for summary judgment, dkt. [60], is **granted**.

### IV. Conclusion

For the reasons explained above, the motion for summary judgment of defendants Melissa Lawrence, Jill Johnson, Don James Owens, and Loretta Dawson is **granted** and this action is

**dismissed** with prejudice. Final judgment consistent with this Order, the screening Order of January 16, 2018, dkt. [4], and the Order of August 7, 2018, dkt. [24], shall now enter.

    **IT IS SO ORDERED**.

Date: _____5/7/2020_____

                                                      SARAH EVANS BARKER, JUDGE
                                                      United States District Court
                                                      Southern District of Indiana

Distribution:

Michael Miller
1848 Ludlow Ave
Indianapolis, IN 46201

Douglass R. Bitner
Katz Korin Cunningham, P.C.
dbitner@kkclegal.com